IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DANIEL RAY BROWN                                                    PLAINTIFF

          v.                        Civil No. 13-3065

BOONE COUNTY, ARKANSAS;
CORPORAL KAITLYNN ROONEY, Boone
County Detention Center; JAIL ADMINISTRATOR
JASON DAY; and SHERIFF MIKE MOORE                        DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights case filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff

proceeds *pro se* and *in forma pauperis*.

While he was incarcerated at the Boone County Detention Center, Plaintiff maintains his

constitutional rights were violated in the following ways: (1) Corporal Rooney used excessive

force against him when she drew her taser and pointed it at him in an effort to intimidate and

scare him; (2) smokeless tobacco was used in front of detainees; (3) Defendants capitalized on

the nicotine addictions of inmates by selling e cigarettes at very high prices; and (4) jailers are

unprofessional, do not follow jail standards, and are not pre-screened to exclude those with

mental problems and/or anger issues.  Plaintiff also mentions an incident occurring on April 5,

2013, when Jailer Engalls pulled a taser on him and banged his head on the floor.  However, in

his response (Doc. 44 at ¶ 13) to the motion, Plaintiff indicates this incident is the subject of a

different civil case, *Brown v. Moore*, Civil No. 13-3049.  It therefore will not be addressed here

and the claim should be dismissed from this case.

AO72A
(Rev. 8/82)

The case is before the Court on a motion for summary judgment (Doc. 18) filed by Separate Defendants Boone County, Jail Administrator Jason Day, and Sheriff Mike Moore. There were some difficulties in serving former Corporal Kaitlynn Rooney and the summary judgment motion was filed prior to an answer (Doc. 30) being filed on her behalf.

Plaintiff has responded (Doc. 44) to the motion for summary judgment. The motion is ready for decision.

### 1. Background

Plaintiff filed this case while he was incarcerated in the Boone County Detention Center in Harrison, Arkansas. (Doc. 1). At the time, he was in jail awaiting trial on pending criminal charges. (Doc. 1).

On June 12, 2013, Plaintiff states Jailer Kathy Allen was working in pod control. (Doc. 1). She advised him over the intercom that he was being given two days lock down for passing a note through the A-pod door. *Id.* Plaintiff denied he had passed a note and asked her to review the surveillance video. *Id.*

Corporal Rooney and Jailer Boreland entered the pod. (Doc. 1). Plaintiff was standing in the doorway to his cell. *Id.* According to Plaintiff, Corporal Rooney "started screaming and throwing a fit. She was psychotic, was using vulgar language, her eyes were bugging out, and she nearly swallowed her smokeless tobacco." *Id.*

Plaintiff maintains Corporal Rooney drew her taser as she came up the stairs. (Doc. 1). Plaintiff asserts there was no direct threat and he did not raise his voice. *Id.* Corporal Rooney told Plaintiff to close his door and he complied. *Id.*

-2-

Plaintiff asked Corporal Rooney to review the tape.  (Doc. 1).  Plaintiff alleges that Corporal Rooney stated that she had already reviewed the tape and that he was guilty.  *Id.* Plaintiff does not believe she looked at the tape.  *Id.*

Although the taser was not used against him, Plaintiff maintains that the it was excessive force for Corporal Rooney to have drawn the taser and pointed it at him for no reason other than an abuse of power.  (Doc. 1).  He asserts that "[s]he wanted to bully me, intimidate, and install fear."  *Id.*

With respect to Sheriff Moore and Jason Day, Plaintiff asserts they "have allowed the jailors here to behave as bullies and abuse inmates."  (Doc. 1).  He also maintains that they do not go by the Jail Standards taser policy or use an incident log.  *Id.*  He asserts that "this behavior has become a pattern or norm as there is no fear of disciplinary action."  *Id.*

Plaintiff states that Sheriff Moore and Jason Day allow Corporal Rooney, Jailer Boreland, and the 309 inmates to use smokeless tobacco.  (Doc. 1).  As the facility is smokeless, Plaintiff maintains no tobacco products should be used.  *Id.*

Plaintiff maintains Sheriff Moore and Jason Day have capitalized on the nicotine addiction of inmates by selling e-cigarettes at a very high price.  (Doc. 1).  Plaintiff asserts that they are "deliberately taking advantage of addictions for financial benefit."  *Id.*

Plaintiff states that the jailers are unprofessional and do not go by jail standards.  (Doc. 1).  He asserts that Sheriff Moore and Jason Day allow this unprofessional behavior and fail to pre-screen jailers for mental problems and/or anger issues.  (Doc. 1).

-3-

### 2.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."  *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."  *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3.  Discussion

 As noted above, Plaintiff asserts the following claims:  (1) Corporal Rooney used excessive force when she drew her taser and pointed it at him in an effort to intimidate and scare him; (2) smokeless tobacco was used in front of detainees; (3) Defendants capitalized on the nicotine addictions of inmates by selling e cigarettes at very high prices; and (4) jailers are unprofessional, do not follow jail standards, and are not pre-screened to exclude those with mental problems and/or anger issues.

-4-

**Excessive Force**

In this case, Plaintiff was a pretrial detainee when the alleged excessive force was used.

In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees].
> *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447
> (1979). Their confinement conditions are analyzed under the due process clause
> of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's
> "cruel and unusual punishment" standard which is used for convicted prisoners.
> *Id*. The injuries detainees suffer must be necessarily incident to administrative
> interests in safety, security and efficiency. As a pretrial detainee, Freeman's
> excessive-force claim is properly analyzed under the due process clause of the
> Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10
> (1989) (due process clause protects pretrial detainee from force amounting to
> punishment).

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

In general, the use of force is "justified when there was a concern for the safety of the institution, the jailers, and the inmates." *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993). In

-5-

the context of the use of tasers, the Eighth Circuit has held the "prisoners have a clearly established right to be free from a Taser shock or its equivalent in the absence of a security threat." *Brown v. City of Golden Valley*, 574 F.3d 491, 500 (8th Cir. 2009). "Tasers fire metal probes into the skin, penetrating up to half an inch. Connected by wires to the taser, the probes can deliver a 50,000 volt shock that lasts up to five seconds and causes electrical muscular disruption." *McKenney v. Harrison*, 635 F.3d 354, 362 (8th Cir. 2011)(citations omitted). The Eighth Circuit noted that "a stun gun inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless." *Hickey*, 12 F.3d at 757. The use of a taser to ensure compliance with housekeeping regulations is not constitutionally permissible. *Id.* at 759.

"Just as officers may use guns only against suspects posing a threat of serious physical harm, the use of tasers requires sufficient justification for their use to be reasonable." *McKenney*, 635 at 364; *see also Jasper v. Thalacker*, 999 F.2d 353 (8th Cir. 1993)(The Eighth Circuit has held that the use of a stun gun to subdue a prisoner who had verbally threatened and then lunged at a prison official did not constitute the use of excessive force); *King v. Shoar*, No. 3:06-cv-61, 2007 WL 2066171 (M.D. Fla. July 13, 2007)("While the use of a taser is not per se excessive force, . . . it may be unnecessary, and therefore unreasonable, for an officer to use force if a suspect if already secured).

Here, Corporal Rooney did not deploy her taser. Instead, she merely took it out of the holster and according to Plaintiff pointed it at him. Plaintiff relying on *Parker v. Asher*, 701 F. Supp. 192 (D. Nev. 1988) maintains that threatening to deploy the taser constitutes excessive

force.  In *Parker* the court recognized that the use of taser guns was not "unconstitutional when used to enforce compliance with an order that had a reasonable security purpose."  *Id.* at 194 (internal quotation marks and citation omitted).  However, it noted that "taser guns should not be used for the sole purpose of punishment or the infliction of pain."  *Id.*

Similarly, the court in *Oliver v. Noll*, 2012 WL 2055033, *2 (N.D. Cal. June 5, 2012), stated that a "threat of deadly force made merely to inflict gratuitous fear and punishment when the party has both the opportunity to carry out the threat and evidences the intent to do so does state a cognizable claim under the Eighth Amendment."  *See also Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995)(drawing a gun and pointing it at a prisoner without any indication that he intended or attempted to fie the gun, did not rise to the level of a constitutional violation); *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986)(drawing gun and terrorizing prisoner with threats of death while using racially offensive language states a claim under the First Amendment, the Due Process Clause, and the Equal Protection Clause).

Here, Plaintiff was protesting a decision to place him on lock down.  He was refusing to obey orders.  Corporal Rooney merely drew the taser and, viewing the facts in the light most favorable to the Plaintiff, pointed the taser at Plaintiff.  The threatened use of a taser or the use of a taser to ensure compliance has been upheld as constitutional.  *See e.g., Michenfelder v. Sumner*, 860 F.2d 328, 334-36 (9th Cir. 1998)(upholding threatened use of a taser to ensure compliance).  As a matter of law, there is no genuine issue of material fact as to whether Corporal Rooney's actions violated the Eighth Amendment.  *See e.g. Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995)(act of drawing a gun and pointing it at the plaintiff, without any

-7-

indication of intention to, or attempted, use did not state a claim); *Salvodon v. Ricotta*, 2013 WL 3816728 (E.D.N.Y. July 22, 2013)(No claim stated based on threatened use of taser alone); *McDaniel v. Yearwood*, 2012 WL 526078, *27 (D. Nev. Feb. 16, 2012)(the threatened use of a taser could constitute excessive force but only when the threat was made for the "malicious purpose of inflicting gratuitous fear"); *Noe v. West Virginia*, 2010 WL 3025561 (N.D. W. Va. July 29, 2010)(merely pointing a taser cannot support a claim for excessive force); *Policky v. City of Seward, Nebraska*, 433 F. Supp. 2d 1013, 1025 (D. Neb. 2006)("If the act of drawing and pointing a gun loaded with bullets does not violate the Fourth Amendment, then the act of drawing and pointing a gun charged with electricity can hardly give rise to a claim of excessive force').

Plaintiff seems to suggest that a violation of the Arkansas Jail Standards amounts to a constitutional violation. It does not. Violations of state law or state standards does not necessarily equate to a constitutional violation. *See e.g., United States v. Suing*, 712 F.3d 1209, 1213 (8th Cir. 2013).

Moreover, even if we assumed that pointing the taser at Plaintiff constituted excessive force, it was not clearly established that such use constituted excessive force. Existing law at the time of the incident did not put Corporal Rooney on notice that the mere drawing or pointing of a taser constituted excessive force. She is therefore entitled to qualified immunity.

### **Use of Smokeless Tobacco**

The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center,*

*Inc.*, 473 U.S. 432, 439 (1985).  An equal protection claim is stated when a fundamental right has been infringed or a state actor intentionally discriminates against the plaintiff because of membership in a protected class.  *See e.g., Purisch v. Tennessee Technological  University*, 76 F.3d 1414, 1424 (6th Cir. 1996).  No claim of constitutional dimension is stated here.  Inmates are not similarly situated to jail personnel and no fundamental right is involved.

### **Profiting on Inmates' Addiction**

Plaintiff objects to the commissary charging excessive prices for smokeless tobacco and e-cigarettes.  There is no constitutional right of access to a commissary.  *Tokar v. Armontrout*, 97 F.3d 1079, 1083 (8th Cir. 1996).  Similarly, "there is simply no legal basis for a demand that inmates be offered items for purchase at or near cost." *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980); *Pepper v. Carroll*, 423 F. Supp. 2d 442, 449 (D. Del. 2006)(no right to purchase commissary items as cheaply as possible).  Plaintiff has no right to direct what products are sold or the price of commissary items.

### **Unprofessional Conduct**

Plaintiff's claims based on the alleged verbal abuse and unprofessional conduct of jail staff fail as a matter of law.  "Verbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985).  Similarly, taunts, threats, name calling, and the use of offensive language do not state a claim of constitutional dimension.  *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993)(inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987)(verbal threats and abuse by jail officials did not rise to the level of a constitutional

-9-

violation); *Martin*, 780 F.2d at 1338-1339 (being called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension);  *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985)(use of racially offensive language in dealing with a prisoner does not, by itself, state a claim); *cf. Burton v. Livingston,* 791 F.2d 97, 100-101 (8th Cir. 1986)(A claim was stated where the prisoner alleged "that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death.").

### **4.  Conclusion**

For the reasons stated, I recommend that: (1) the claims regarding Jailer Engalls alleged use of force be dismissed without prejudice as duplicative of the claims asserted in *Brown v. Moore*, Civil No. 13-3049); and (2) the summary judgment motion (Doc. 18) filed by Defendants be granted with respect to all other claims and this case be dismissed.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of July 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

-10-