IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**DANIEL RAY BROWN**                                                                               **PLAINTIFF**

v.                                      CASE NO. 5:13-CV-03065

**BOONE COUNTY, ARKANSAS;
CORPORAL KAITLYNN ROONEY, Boone
County Detention Center; JAIL ADMINISTRATOR
JASON DAY; and SHERIFF MIKE MOORE**                                  **DEFENDANTS**

**OPINION AND ORDER**

Currently before the Court is the Report and Recommendation ("R & R") (Doc. 48) of the Honorable James R. Marschewski, Chief United States Magistrate for the Western District of Arkansas, regarding Separate Defendants' (Boone County, Arkansas, Jail Administrator Jason Day, and Sheriff Mike Moore) Motion for Summary Judgment (Doc. 18).[1] Plaintiff Daniel Ray Brown ("Brown") has filed Objections to the R & R (Doc. 49). The Court has conducted a *de novo* review as to the Magistrate's findings and recommendations to which Brown has raised specific objections. 28 U.S.C. § 636(b)(1). For the reasons set forth below, the Court finds that the Magistrate's Recommendations

---

[1] On October 8, 2013, the Magistrate ordered the Defendants to file a Motion for Summary Judgment (Doc. 14). As of the date the Motion was filed, Corporal Kaitlynn Rooney had not been served and/or entered her appearance, and thus Rooney is not listed as a moving party on the Motion for Summary Judgment. It is obvious and implicit that the parties treated and responded to the Motion as if Rooney had been an original movant. Brown's Response to the Motion contemplated Rooney as a moving party, as did his substantive objections to the R & R. The Court has therefore viewed and treated the Motion for Summary Judgment as if Rooney were identified as a moving party from the beginning.

...

are **ADOPTED AS MODIFIED,** to reflect this Court's additional findings and conclusions. Brown's Complaint is **DISMISSED WITH PREJUDICE**.

## I.  BACKGROUND

While incarcerated at Boone County Detention Center ("BCDC"), Brown maintains that his constitutional rights were violated because: (1) Corporal Kaitlynn Rooney used excessive force against him when she drew her taser and pointed it at him in an effort to intimidate him; (2) smokeless tobacco was used in front of detainees; (3) Defendants capitalized on the nicotine addictions of inmates by selling e-cigarettes at high prices; (4) jailers are unprofessional and do not follow jail standards regarding the taser policy or use an incident log; and (5) Moore and Day failed to train employees in BCDC taser policy and they do not pre-screen jailers for mental problems or anger issues.[2]  He also requests that Defendants be prohibited from using pepper spray and tasers.  As compensation, Brown seeks money damages from all Defendants, whom he sues in both their individual and official capacities.[3]

The Court adopts the facts as set forth in the R & R, but will supplement those facts as necessary to address Brown's objections.  Brown contends that Corporal Rooney

---

[2] Brown makes other allegations in his Complaint regarding the alleged use of excessive force by "Jailor Engalls."  The Magistrate recommends that the claim against Engles be dismissed without prejudice because this particular incident/claim is the subject of Brown's separate lawsuit (Case No. 5:13-cv-03049).  Brown does not object to this recommendation.  Brown's claim against Engles will therefore be dismissed without prejudice and considered separately in the pending matter of *Brown v. Moore*, Case No. 5:13-cv-03049.

[3] Brown did not make this distinction in his original Complaint.  However, in his Response to the Motion for Summary Judgment, Brown clarified his intent to sue Defendants in both their individual and official capacities.  The Court will therefore consider both types of claims in its analysis.

entered his pod, after he was accused of passing a note through the pod door to female detainees. According to Brown, Rooney began using vulgar language and "drew her taser out as she came up the stairs towards me." (Doc. 1, p. 4). Brown contends this was a constitutionally excessive and unjustified use of force because he did not pose a threat to Rooney. In her Answer, Rooney generally denies all allegations in Brown's Complaint (Doc. 30). For summary judgment purposes, Brown's factual statements will be treated as if they were true.

The Magistrate found and recommends that: (1) Defendants are entitled to summary judgment because no reasonable juror could find that Rooney used excessive force, and even if they could, Rooney is entitled to qualified immunity; (2) there is no basis to support Brown's allegation that constitutional violations are implicated through BCDC's policy on the use of smokeless tobacco or sale of e-cigarettes; and (3) Brown's claim as to Defendants' alleged "unprofessional conduct" regarding threats and verbal abuse does not state a constitutional violation.

Brown offers two specific objections to the Magistrate's recommendation. First, he contends that he was subjected to excessive force when Rooney drew her taser and pointed it at him without justification. Second, Brown asserts that a pattern of abuse is evidenced by Separate Defendants Moore and Day's failure to investigate his claim, retain incident reports, and train jail staff in BCDC taser polices.[4]

---

[4] Brown did not object to the Magistrate's finding that the use of smokeless tobacco by jail staff and/or BCDC's unreasonably high profits from the sale of e-cigarettes are not violations of Brown's constitutional rights. The Court will therefore adopt the Magistrate's findings on those contentions without change or modification.

## II. DISCUSSION

### A. Use of Excessive Force

Although it is undisputed that the taser was not deployed, Brown maintains that Rooney's actions in drawing her taser and pointing it at him without justification constitutes excessive force. Brown further contends that Moore and Day have allowed jailers to intimidate inmates in this fashion and that this behavior has become a pattern at BCDC.

When analyzing excessive force claims of pretrial detainees, courts apply an "objective reasonableness" standard. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001).

> The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. Constitutionally infirm practices are those that are punitive in intent, those that are not rationally related to a legitimate purpose or those that are rationally related but are excessive in light of their purpose.

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048-49 (8th Cir. 1989).

Whether there has been excessive force is determined under a totality of the circumstances analysis. The Supreme Court has said that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and that the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

Although the Eighth Circuit has found "prisoners have a clearly established right to be free from a Taser shock or its equivalent in the absence of a security threat," *Brown v. City of Golden Valley*, 574 F.3d 491, 500 (8th Cir. 2009), it would appear that whether the mere pointing of a taser at someone constitutes excessive force has not been decided by this circuit.  By analogy, however, the Eighth Circuit has held that drawing and pointing a gun at a prisoner, without indication that the officer intended or attempted to fire it, does not rise to the level of a constitutional violation.  *Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995).  Thus, as the district court for the District of Nebraska stated, "if the act of drawing and pointing a gun loaded with bullets does not violate the Fourth Amendment, then the act of drawing and pointing a gun charged with electricity can hardly give rise to a claim of excessive force." *Policky v. City of Seward, Nebraska*, 433 F. Supp. 2d 1013, 1025 (D. Neb. 2006).

Likewise, courts in other jurisdictions have found that threatened use of a taser does not support a claim of excessive force. *See Salvodon v. Ricotta*, 2013 WL 3816728 (E.D.N.Y. July 22, 2013) (no claim stated based on threatened use of taser alone); *Noe v. West Virginia*, 2010 WL 3025561 (N.D. W.Va. July 29, 2010) (merely pointing a taser cannot support a claim for excessive force).

On the other hand, some courts have suggested that even benign use of a taser must serve a purpose beyond simply inflicting gratuitous fear. *See McDaniel v. Yearwood*, 2012 WL 526078, *27 (D. Nev. Feb. 16, 2012) (the threatened use of a taser could constitute excessive force but only when the threat was made for the "malicious purpose of inflicting gratuitous fear"); and *Parker v. Asher*, 701 F. Supp. 192 (D. Nev. 1988) (Eighth

Amendment claim not valid where "merely alleging that a correctional officer threatened to harm him [because] . . . . [c]orrectional officers often must use threats to enforce security and discipline . . . [However] . . . "guards cannot aim their taser guns at inmates for the malicious purpose of inflicting gratuitous fear.").

In this case, Defendants point to the incident reports and argue that Rooney and her fellow officers were sent to Brown's pod because the inmates refused to comply with lock-down procedures. Brown states that Rooney pointed the taser directly at him "for no cause other than an abuse of power or force." (Doc. 1, p.4). The Court does not believe that Brown's conclusion is well grounded, but will nevertheless give him the benefit of this inference.

Assuming arguendo that a § 1983 violation has occurred, Rooney (and the other Defendants) are still entitled to qualified immunity if she can establish that her "conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carroll v. Pfeiffer*, 262 F.3d 847, 849 (8th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order to overcome qualified immunity, Brown must present sufficient facts to show not only that Rooney's conduct violated a constitutional right, but also that such right was clearly established at the time of the alleged violation. *Peterson v. Kopp*, 754 F.3d 594, 600 (8th Cir. 2014). Brown must point to cases of controlling authority in this jurisdiction at the time of the incident, or to "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that [her] actions were lawful." *Payne v. Britten*, 749 F.3d 697, 708 (8th Cir. 2014) (internal quotation omitted). "Without one or the other, qualified immunity applies—regardless of whether there is a factual dispute about what occurred—because

the defendant did not have 'fair and clear warning' that [her] conduct was unlawful." *Id.* (citing *United States v. Lanier,* 520 U.S. 259, 271 (1997)). Qualified immunity applies unless the rule is "beyond debate." *Id.* (citing *Stanton v. Sims,* 134 S.Ct. 3, 8 (2013)).

Viewing the facts in the light most favorable to Brown, the Court will assume that Rooney unholstered her taser and aimed it at Brown for no legitimate purpose. Even so, existing law within the Eighth Circuit did not put Rooney on notice that the mere drawing and pointing of the taser constituted excessive force. No such constitutional violation has been clearly established in this jurisdiction. In fact, the district court for the District of Nebraska has held that such actions do not rise to the level of constitutional protection. *Policky*, 433 F.Supp.2d at 1025.

Although some district courts have suggested that a constitutional line exists and can be crossed short of actually discharging the taser (*e.g. Parker v. Asher*), this argument has not been adopted in this circuit. Nor does this Court view those cases as a consensus of persuasive authority such that a reasonable officer would have believed such actions to be unlawful. *Payne v. Britten*, 749 F.3d at 708.

Thus, the Court finds that Rooney is entitled to qualified immunity and Brown's objection will be overruled.

### B.  Dismissal of Separate Defendants

In his Response to Summary Judgment, Brown states that he intended to sue all Defendants in both their individual and official capacities. The R & R does not clearly differentiate the separate analysis required to support the dismissal of both types of claims. Thus, the findings and reasoning of the R & R are modified for the purpose of

differentiating the individual claims from the official capacity claims against Moore and Day, as well as the further distinction of the separate claims against Boone County, Arkansas.

### – *Individual Capacity Claims* –

Brown objects to the dismissal of Moore and Day. Brown bootstraps his taser allegations against Rooney to draw an otherwise unsupported conclusion that Moore and Day failed to train the jail staff, and specifically that they have allowed Boone County Jailers to disregard BCDC policies and abuse inmates. Because Brown's underlying taser allegation does not arise to the level of a constitutional violation, it is unnecessary to address whether Moore and Day are personally liable for the actions of the jailers who engaged in the same type of conduct.

Even if the Court had found that Rooney committed a § 1983 violation, Moore and Day could not be found personally liable based on a theory of *respondeat superior*. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012), *cert. denied,* 133 S.Ct. 865 (2013) (internal quotation omitted).

Supervisors are, however, subject to *direct liability* "for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices.'" *Id.* But, Brown has not made a facially plausible allegation, nor offered any evidence, that Moore or Day were personally involved in a threatened use of the taser. While Brown does state a conclusion that these Defendants failed to investigate his claim, the failure to investigate an event which is not a constitutional violation cannot in itself be a violation of Brown's constitutional rights.

*– Official Capacity Claims –*

Brown has also sued Boone County and all individually named Defendants in their official capacities. Such claims are not cognizable based upon the facts in this case. A § 1983 action against individuals in their official capacities is equivalent to a claim against the entity itself, requiring proof that an official custom or policy led to the constitutional deprivation. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Boone County may be held liable for the unconstitutional acts of its employees only when those acts implement or execute an unconstitutional policy or custom. *Doe v. Washington Cnty.*, 150 F.3d 920, 922 (8th Cir. 1998). Brown states an unfounded conclusion that there is a jail-wide policy or custom of not training officers as to proper taser use, but, as explained earlier, even if that were true, Brown has failed to establish that any officer's use of a taser at BCDC violated his or any other inmates' constitutional rights. Likewise, Boone County cannot be liable for actions of its employees that are not deemed unconstitutional.

Therefore, all individual capacity and official capacity claims against the Defendants are dismissed.

### C. Unprofessional Conduct

Brown also objects to the Magistrate's recommended dismissal of the unprofessional conduct allegations. According to Brown, the failure to follow jail standards regarding taser use policies and/or incident logs is a discrete and separate basis of liability. Brown asserts that Rooney's use of the taser was, at a minimum, "unprofessional," under accepted jail standards and therefore in violation of the Eighth Amendment.

Violations of state standards do not necessarily equate to constitutional violations. *United States v. Suing*, 712 F.3d 1209, 1213 (8th Cir. 2013). Moreover, an internal jail policy or procedure does not create a constitutional right, nor does a correctional official's failure to follow such a regulation rise to the level of a § 1983 claim. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). As discussed above, Brown's constitutional rights were not implicated through Rooney's taser use. Generally stating that Rooney and other officers engaged in "unprofessional conduct" is insufficient to state a constitutional violation. Therefore, Brown's objection in this regard is overruled.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 18) is **GRANTED**, and Daniel Ray Brown's Complaint (Doc. 1) as to Defendants Boone County, Arkansas, Corporal Kaitlynn Rooney, Jail Administrator Jason Day, and Sheriff Mike Moore is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the allegations pertaining to Bobby Engles (who is not specifically listed as a Defendant in this case), are **DISMISSED WITHOUT PREJUDICE** because such claims are duplicative of those asserted in *Brown v. Moore*, Case No. 5:13-cv-03049.

**IT IS SO ORDERED** this 5th day of September, 2014.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE